# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENYATTA WHITE, Jr., <br>     Plaintiff, | : <br> : <br> : | |
| v. | : | CIVIL ACTION NO. 19-CV-3302 |
| C.O. GILLARD, *et al.*, <br>     Defendants. | : <br> : <br> : | |

## MEMORANDUM

**BAYLSON, J.**                                                                                                                           **AUGUST    9, 2019**

*Pro se* Plaintiff Kenyatta White, Jr., a pretrial detainee currently confined at the Philadelphia Detention Center, has filed a Complaint pursuant to 42 U.S.C. § 1983 alleging constitutional claims.[1] He has also filed a Motion to Proceed *In Forma Pauperis*. Because it appears that White is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, certain claims in the Complaint will be dismissed with prejudice, and other claims will be dismissed without prejudice. White will also be granted leave to file an amended complaint to attempt to cure the defects noted by the Court concerning the claims dismissed without prejudice.

## I. FACTS

White alleges that on May 19, 2019 Defendant Gillard was assigned to G Dorm for the night shift and positioned in his booth in front of Section 303. (ECF No. 2 at 5.)[2] At 1:35 a.m., a fight broke out involving several inmates. White, along with another inmate named Mullen,

---

[1] Although White does not state that he is a pretrial detainee, a review of public records shows that he is being detained at the Detention Center pending trial on charges of possession of a controlled substance. *See Commonwealth v. White*, MC-51-CR-2116-2019 (Phila. Mun. Ct.)

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

attempted to break up the fight because Gillard allegedly did not act to do so. (*Id.*) White suffered stab wounds to his upper left arm. (*Id.*) Gillard allegedly failed to call for a response even after White told him he was stabbed. (*Id.*) White next asserts that Gillard placed him and Mullen in a sally port and contacted Defendant Sgt. John who responded to the scene. (*Id.* at 6.) Sgt. John told White to grab his things and that he was being moved to a different dorm. (*Id.*) When White arrived at E Dorm he told Sgt. John he needed medical attention. (*Id.*) At the medical unit, a nurse bandaged his wounds and he was returned to E Dorm. (*Id.*) Later, Sgt. John came to E Dorm with other officers and told White and Mullen to again pack their things because they were being taken to protective custody. (*Id.*) While still bleeding, White was handcuffed and made to drag his mattress and belongings to the Segregated Housing Unit ("SHU"). (*Id.* at 7.) White alleges that Sgt. John failed to follow protocols to investigate the stabbing incident before ordering White to the SHU. (*Id.*) After being taken to the SHU, White received no medical care for his wounds for nine days. (*Id.* at 8.) At the time he filed his Complaint, White had been held in the SHU for 20 days, and had four disciplinary hearings continued allegedly due to the unspecified "malicious actions" of Gillard and Sgt. John. (*Id.*) He received a hearing on June 11, 2019, when he had already been in the SHU for 25 days, resulting in a sentence of 30 days confinement in the SHU. (*Id.* at 11.)

Attached to White's Complaint is a copy of an "Inmate Misconduct" report dated May 19, 2019, and signed by Defendants Gillard and John. The report recites:

> On Sunday, May 19, 2019, I Officer Gillard was assigned to G-dorm [] for the 11pm to 7am shift. At approx. 1:35 am, I C/o Gillard was called by Inmate Mullen Troy [] section 303 who called me to the gate. Whom visually close up was Injured with a slightly blood nose. Seconds after, another altercation happened in the same section with Inmate White Kenyatta [] (who I visually seen) fighting another Inmate+. I then contacted Sgt john via warlike [sic] & telephone before going into the section where the incident had ceased. I then placed both I/m's White Kenyatta & Mullen Troy in the sally port holding area,

2

>    where moments later Sgt John arrived and escorted both I/m's to Medical and B
>    block Without further incidents.

(ECF No. 2 at 15.) Also attached to the Complaint is a mostly illegible Disciplinary Hearing Summary Report. (Id. at 16.) The only legible entries record White's name and his sentence of 30 days.

White alleges that Gillard violated his rights by failing to keep him safe and writing a false incident report that caused him to be transferred to the SHU. (*Id.* at 9.) He alleges that John violated his rights by failing to follow protocol before ordering him to the SHU, photograph his wounds,[3] conduct a search of the area for weapons, and check the hands of other inmates (presumably for evidence of blood from his stab wounds).[4] (*Id.*) Warden Cathy M. Talmadge is named as a Defendant because she "allows the Detention Center to run on unconstitutional policies, such as Officer's [sic] assaulting inmates then making false reports, then sending inmates to the [SHU] for any reason they feel is deemable." (*Id.* at 10.) White also asserts that she allows disciplinary officers to find inmates "guilty on all write ups," will not reverse decisions on appeal, and allowed the other Defendants to mistreat White and unlawfully send him to the SHU. (*Id.*) White asserts constitutional claims for "medical neglect," false imprisonment, failure to keep him safe, falsifying documents, excessive force, deprivation of his liberty and privileges, and for being unlawfully housed in the SHU for 30 days. (*Id.* at 12.)

---

[3] White concedes in another part of his Complaint that Sgt. John did photograph his wounds on June 6, 2019. (ECF No. 2 at 11.)

[4] White asserts that he was asked to fill out a form stating his version of the events on June 7, 2019. (*Id.* at 11.) He was also "forced" to fill out a medical form on which Gillard stated White had only a little cut on his arm." (*Id.* at 12.) This occurred prior to the disciplinary hearing he received.

## II. STANDARD OF REVIEW

The Court will grant White leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As White is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short a plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

---

[5] However, as White is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## III. DISCUSSION

Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Official Capacity Claims

Official capacity claims against City officials like Warden Talmadge, Sgt. John and C.O. Gillard are indistinguishable from claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895

5

F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

The official capacity claim against Warden Talmadge asserts that she allows the Detention Center "to run on unconstitutional policies, such as Officer's [sic] assaulting inmates then making false reports, then sending inmates to the [SHU] for any reason they feel is deemable," and allows disciplinary officers to find inmates "guilty on all write ups," will not reverse decisions on appeal, and allowed the other Defendants to mistreat White and unlawfully send him to the SHU. (ECF No. 2 at 10.) These allegations fail to meet the *Monell* standard. White merely asserts in conclusory fashion that Talmadge maintains unconstitutional policies without setting form the requisite specificity required by the case law. Rather, his allegation "simply paraphrases the elements of a *Monell* claim," which has been held to be insufficient to state a plausible claim. *See Anderson v. City of Philadelphia*, Civ. A. No. 14-6747, 2015 WL 3647416, at *4 (E.D. Pa. June 12, 2015) (holding that allegation that City developed, implemented, enforced, encouraged, and sanctioned de facto policies, and/or customs exhibiting deliberate indifference to the Plaintiff's constitutional rights was insufficient); *Smith v. McClendon*, Civ. A. No. 14-6358, 2015 WL 2079689, *8 (E.D. Pa. May 5, 2015) (holding that allegation that adverse treatment was the result of municipal policies, customs, omissions, lack of training and continuing indifference to deprived disabled persons of reasonable access to a public

building because of disability was insufficient) (citing *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014); *see also McTernan*, 564 F.3d at 658 (holding that allegation that plaintiff's rights were violated "due to the City's policy of ignoring First Amendment right[s.]" was "not sufficient"). Because White fails to allege specific facts regarding any relevant policy or custom — other than his own experience with the disciplinary procedures — he fails to meet the "rigorous standards of culpability and causation" required for *Monell* liability. *Brown v. Bd. Of Cty. Comm'rs of Bryan Cty.*, 520 U.S. 397, 405 (1997). Accordingly, his official capacity claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Failure to Protect Claim

An unsentenced inmate like White "'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). (quotation marks and alterations omitted in original). Therefore, White has a "clearly established constitutional right to have prison officials protect him from inmate violence." *Id.* To state a claim under § 1983 against a prison official for failure to protect an inmate from violence by another inmate, a plaintiff must plead facts that show: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A close examination of White's factual allegations shows that he has not meet this standard.

First, White fails to assert facts to support a plausible claim that he was housed under conditions posing a substantial risk of harm. Indeed, he makes no allegations whatsoever about the conditions of his confinement. Second, while White makes a deliberate indifference

7

allegation that Defendant Gillard "failed to call for a response even after White told him he was stabbed" (ECF No. 2 at 5), he also asserts that Gillard did act by placing him and Mullen in the sally port to separate them from the other inmates and called Sgt. John to the scene. (*Id.* at 6.) Finally, there is no assertion that Gillard's deliberate indifference caused White harm since White was allegedly stabbed by the other inmate before Gillard was alerted to the incident by Mullen. For these reasons, the failure to protect claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a plausible claim. However, because the Court cannot say at this time that White can never state a plausible claim based on a failure to protect theory, the claim will be dismissed without prejudice and White will be granted leave to amend his Complaint if he can cure the defects identified by the Court.

    **C.**    **False Incident Report Claim**

White next attempts to assert a claim based upon Gillard's and John's alleged creation of a false incident report and John's alleged failure to follow protocols before signing the report and ordering him to the SHU. This allegation also fails to state a plausible claim. Provided that a prisoner is afforded due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action under § 1983. *See, e.g.*, *Richardson v. Sherrer*, 344 F. App'x 755, 757-758 (3d Cir. 2009) (holding that filing false disciplinary charges does not itself violate a prisoner's constitutional rights under *Farmer*, so long as procedural due process protections were provided); *Booth v. Pence*, 141 F. App'x 66 (3d Cir. 2005) (affirming grant of summary judgment where district court concluded that issuance of false misconducts was not a sufficiently serious deprivation to support a claim of cruel and unusual punishment under *Farmer*); *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (stating that due process is satisfied where an

8

inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports). White concedes that he received notice and a due process hearing following the incident. Accordingly, this claim must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. Medical Neglect Claim

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[6] *See Farmer*, 511 U.S. at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

---

[6] As it appears that White was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

9

To the extent that this claim is asserted against Defendants Gillard and John, it is implausible. White concedes that he was seen by medical after he told John that he needed attention after arriving at E Dorm, and that his wound was bandaged by medical staff. The fact that he still might have been bleeding when he had to move his things again to the SHU is not sufficiently serious to satisfy the deliberate indifference standard. Finally, while White asserts that the did not received medical care for his wounds for nine days after being placed in the SHU, he does not allege that Gillard or John were involved in or responsible for this failure. To the extent that he asserts this claim against Talmadge, he does not allege that she was aware of his need for medical attention or that she delayed or prevented him from receiving necessary medical treatment. Accordingly, this claim is also dismissed pursuant to § 1915(e)(2)(B). However, the dismissal of the claim will be without prejudice and White will be granted an opportunity to amend his Complaint if he is able to cure the defects the Court has noted with regard to this claim.

### E. Due Process Claim Based on Placement in SHU

White asserts he was falsely imprisoned in the SHU and denied his liberty and privileges. The Court assumes that White intends to raise a claim based on the Due Process clause of the Fourteenth Amendment based on his placement in the SHU. In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court acknowledged that state prison regulations may create liberty interests protected by the Due Process Clause. A due process violation may occur where the challenged action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Because segregation at a different administrative security level is the sort of confinement that a detainee should reasonably anticipate receiving at some point in his detention depending

on events and his own conduct, the transfer to a less amenable and more restrictive custody does not implicate a liberty interest that arises under the Due Process Clause. *See Fountain v. Vaughn*, 679 F. App'x 117, 120 (3d Cir. Feb. 17, 2017) (citing *Toms v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) ). In deciding whether a protected liberty interest exists, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). The Third Circuit in *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997), held that administrative custody for a period as long as fifteen months is not an atypical and significant hardship.

White has not alleged a plausible claim that his placement in the SHU was beyond what a detainee might reasonably expect to encounter. He was held in the SHU for 30 days following the incident and received notice and a hearing. There is nothing atypical about such an occurrence, especially since White concedes he was involved in the inter-inmate fight. Accordingly, the claim is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. CONCLUSION

For the reasons stated, the following claims contained in White's Complaint are dismissed with prejudice: (1) all official capacity claims, (2) the false incident report claim, (3) the false imprisonment due process claim. The following claims are dismissed without prejudice: (1) the failure to protect claim, and (2) the medical neglect claim. White is granted leave to file an amended complaint in accordance with the following Order.

**BY THE COURT:**

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON, J.**